IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VOGUE TOWER PARTNERS VII, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 22-CV-00584 |
| v. ) | |
| ) | |
| THE CHARTIERS TOWNSHIP ZONING ) | |
| HEARING BOARD, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Presently before the Court are the parties' cross-motions for judgment on Counts 1 and 4 (Docket Nos. 33, 34). The Court, having considered these motions, supporting briefs, responses, replies, and the Record of Proceedings ("RP"), will grant the motion filed by the Chartiers Township Zoning Hearing Board ("the Board") (Docket No. 34), and will deny the motion filed by Vogue Tower Partners VII, LLC ("Vogue") (Docket No. 33).

**I.   Background**

Because the parties are well-acquainted with the factual background of this case, the Court herein presents an abbreviated version of the facts relevant to the pending motions. Vogue "constructs, owns, and manages wireless telecommunications facilities that are used by telecommunications carriers to provide voice, data, internet, and other wireless services to consumers in Pennsylvania and throughout the country." (Docket No. 1, ¶ 1). In January 2022, Vogue filed an application with the Board for a "proposed development of" a property at 604 Ridge Avenue, Chartiers Township, Pennsylvania, (hereinafter "604 Ridge") "for a multi-tenant wireless communications facility which will serve the community by filling gaps in wireless coverage which cannot be filled by erecting a communication tower in the I-1 district, the only

district in which such facilities are permitted under the zoning ordinance." (Docket No. 29, RP 280).

Use of property in Chartiers Township is governed by the Township's Zoning Ordinance (hereinafter "the Ordinance"), which is available online at https://ecode360.com/11875563. Section 350-10(A) of the Ordinance identifies eleven districts in the Township, and Section 350-10(B) is a "Use Chart" that shows which "uses shall be permitted as permitted uses, conditional uses, and special exceptions" in each zoning district.[1] Among the uses addressed on the Use Chart are communication towers, which are identified as a conditional use in I-1 (Industrial) zoning districts, subject to the requirements of Section 350-47. Section 350-47 requires that construction of communications towers be in accordance with not only the Ordinance, but also "any applicable state or federal laws and or regulations, and any reasonable conditions and/or safeguards attached by the Supervisors as it deems necessary to implement the purposes of the MPC [53 PS § 10101 et seq.] and Township ordinances." Communication towers are not a "permitted use" in R-2 Residence Districts, *see* § 350-10, which is the zoning designation for the property at 604 Ridge.

Because its intended use was not expressly permitted by the Ordinance, Vogue pursued its application to construct a communications tower at 604 Ridge by articulating three theories for approval: variances, a substantive validity challenge, and a special exception pursuant to § 350-43 of the Ordinance. (RP 279). In a project narrative addended to the application, Vogue explained that the tower it was proposing would be a "multi-tenant 150 [foot] monopole structure within a fenced compound area" that would "have provisions for multiple carriers, to reduce the need for

---

[1] The parties disagree about the significance of empty boxes on the Use Chart and whether an empty box merely means the corresponding use is unaddressed or forbidden. (*See* Docket No. 33-1, pg. 8, n.27; Docket No. 37, pgs. 4-5; Docket No. 38, pg. 14). In its evaluation of the motions under consideration, the Court will treat an empty box in Section 350-10(B) as indicating that a use is not provided for rather than specifically prohibited.

new towers." (RP 280).  The Board held a public hearing on Vogue's application on February 28, 2022, (RP 2–195), and denied Vogue's application on March 21, 2022.  (Docket No. 1, ¶ 31).  The Board thereafter issued a written decision on April 7, 2022, explaining the denial in Findings of Fact and Conclusions of Law.  (*Id.* ¶ 33, Docket No. 4-1).

In its **Findings of Fact**, the Board noted 604 Ridge's R-2 zoning district, that the district does not permit communications towers, and the purpose of Vogue's project.  (*Id.* ¶¶ 3, 10–11, 16).  The Board acknowledged evidence submitted by Vogue purporting to show current service coverage in the relevant area compared to projected coverage after completion of the project.  (*Id.* ¶ 12).  The Board also acknowledged testimony offered by Vogue that "it exhausted other opportunities" for alternative locations in the Township to solve the gap in coverage.  (*Id.* ¶ 13).

The Board next described relevant provisions of the Ordinance, *e.g.*, that under Section 350-10, communications towers constitute a "Conditional Use" in an I-1 district (*id.* ¶ 15), and that the Ordinance addresses "Uses not specifically provided for" in Section 350-43, wherein the Ordinance states:

> Whenever in any district … a use is *neither specifically permitted or denied* and an application is made … to the Zoning Officer for such use, the Zoning Officer shall refer the application to the Board, *which shall have the authority to permit or deny the use*. The use may be permitted *if it is similar to and compatible with permitted uses* in the district and in no way is in conflict with the general purposes and intent of this chapter.

*Id.* (emphasis added).

Next, the Board catalogued the theories for approval presented in Vogue's application. (Docket No. 4-1, ¶¶ 18-22).  The Board further noted that "[n]umerous individuals" appeared at the public hearing to oppose Vogue's application and testified that they did not experience dropped calls or poor service in the area.  (*Id.* ¶¶ 24–25).

3

In its **Conclusions of Law**, the Board decided, *inter alia*: that towers like the one proposed are only permitted in I-1 zoning districts (*id.* ¶ 2); "[s]ufficient real property exists within Township" in I-1 districts for such communications towers (*id.* ¶ 4); and that—considering Vogue's testimony that there is inadequate coverage in areas of the Township compared to area residents' testimony that call coverage is adequate—Vogue was "'directing' the Board and residents of what they need, rather than proving that there was a need, that service was inadequate, that safety issues required [the tower] and that a [tower] in the specific R-2 Zoned District was necessary rather than placement in the approved use I-1 … District" (*id.* ¶ 7). The Board concluded that Vogue had therefore not: met its burden of proof nor offered credible evidence that the Ordinance was exclusionary in application (*id.* ¶ 8); shown that enforcement of the Ordinance would have the effect of prohibiting wireless services (*id.* ¶ 12(B)); or that, for purposes of the uses-not-provided-for provision of the Ordinance, shown its proposed use would be "similar to and compatible with" permitted R-2 uses (*id.* ¶ 13(a)). The Board also decided that the tower would conflict with the general purposes and intent of the Ordinance and that such a use was prohibited in R-2 zoning districts notwithstanding Vogue's argument concerning the absence of a specific exclusion at Section 350-10(B). (*Id*. ¶ 14–16). Finally, the Board decided that Vogue had not demonstrated "unnecessary hardship" to justify granting a variance. (*Id.* ¶ 20).

With the Board's decision in hand, Vogue exercised its right to challenge that decision before this Court pursuant to the Telecommunications Act ("TCA"). 47 U.S.C. § 332(c)(7)(B)(v).[2]

---

[2]   "Congress enacted the TCA to provide a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." *Ogden Fire Co. No. 1 v. Upper Chichester TP.*, 504 F.3d 370, 377–78 (3d Cir. 2007) (quoting *APT Pittsburgh Ltd. P'ship v. Penn Twp.*, 196 F.3d 469, 473 (3d Cir. 1999)). Balancing competing interests of local authorities while achieving its stated goals, the TCA, in "Section 332(c)(7)[,] … expressly preserves the traditional authority enjoyed by state and local government to regulate land use and zoning, but places

Vogue's Complaint for Expedited Declaratory and Injunctive Relief contains five counts, the *first* and *fourth* of which are at issue in the cross-motions for judgment before the Court: (1) *failure to support the denial with substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii)*; (2) prohibition of telecommunications service and personal wireless services, *id.* §§ 253(a) and 332(c)(7)(B)(i); (3) declaratory judgment, 28 U.S.C. § 2201(a); (4) *zoning appeal, MPC § 1001-A, et seq., 53 PS § 11001-A, et seq.*, *i.e., a violation of state law*; and (5) injunctive relief (Docket No. 1, pgs. 11-18).  The allegations underlying Vogue's first count are that the Board's written decision violates the TCA's procedural requirement[3] that "decision[s] by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be … *supported by substantial evidence*[.]" 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).  Vogue argues that the Board's decision is not so supported and that the Board misinterpreted and misapplied its own Ordinance, ignored evidence, and gave undue weight to inadmissible evidence.  The allegations underlying Vogue's fourth count—*i.e.*, Vogue's zoning appeal pursuant to Pennsylvania's Municipalities Planning Code (MPC) § 1001-A, *et seq.* and 53 P.S. § 11001-A, *et seq.*—are that the Board's decision was arbitrary and capricious*, i.e.*, not supported by substantial evidence.  The parties' cross-motions for judgment on Counts 1 and 4 are fully briefed and ready for disposition.

---

several substantive and procedural limits upon that authority when it is exercised in relation to personal wireless service facilities." *Id.* (quoting *APT Pittsburgh Ltd.*, 196 F.3d at 473).

3   Substantively, the TCA also makes it unlawful for zoning Boards to render decisions that have "the effect of prohibiting wireless service." *Ne. Pennsylvania SMSA LP v. Smithfield Twp. Bd. of Supervisors*, 433 F. Supp. 3d 703, 735 (M.D. Pa. 2020) (quoting 47 U.S.C. § 332(c)(7)(B)(i)(II)).  Vogue has invoked subsection 332(c)(7)(B)(i)(II) in Count 2 of the Complaint, so questions about whether the Board's decision violated that subsection are reserved for future proceedings relevant to Count 2.

5

II.     **Standard of Review**[4]

Pursuant to Section 332(c)(7)(B)(iii) of the TCA, the Court reviews the Board's decision for substantial evidence. The same standard applies for Vogue's zoning appeal under Pennsylvania state law. *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998); *Larsen v. Zoning Bd. of Adjustment of City of Pittsburgh*, 672 A.2d 286, 289 (Pa. 1996) ("An abuse of discretion will only be found where the zoning board's findings are not supported by substantial evidence."); *Ne. Pennsylvania SMSA LP*, 433 F. Supp. 3d at 715–16 ("[B]oth the TCA substantial evidence claim and the state law zoning appeal claim hinge on the same 'substantial evidence' standard[.]").[5]

Substantial evidence is a term of art that means "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Omnipoint Commc'ns Enter., L.P. v. Zoning Hearing*

---

[4]  Procedurally, the parties' cross-motions for judgment on Counts 1 and 4 are treated as motions for summary judgment. *APT Pittsburgh Ltd. P'ship v. Lower Yoder Twp., Cambria Cnty.*, 111 F. Supp. 2d 664, 668 and n.4 (W.D. Pa. 2000) (noting that this is the "procedure [that] is consistent with that followed by most … federal district courts in reviewing the decisions of local zoning authorities under the TCA"). Summary judgment pursuant to Rule 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

[5]  Before filing the cross-motions currently under the Court's review, the parties jointly stipulated to the applicable standard of review discussed herein. (Docket No. 30). They agreed that adjudication of Counts 1 and 4 should be done fully and finally under the substantial-evidence test. (*Id.* at pg. 1). It is possible to interpret Vogue's brief in support of its motion to suggest that a heightened standard of review applies to its TCA claim *in addition to* the substantial evidence test. (Docket No. 33-1, pg. 5 ("One important addition about this standard of review is that denials of applications like Vogue's are subject to heightened scrutiny.")). Vogue cites *Ogden Fire Co. No. 1 v. Upper Chichester TP.*, 504 F.3d 370, 379 (3d Cir. 2007) (citing *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 493 (2d Cir. 1999)) in support of its assertion that TCA cases are subject to a heightened standard of review. But the court in *Cellular Tel. Co. v. Town of Oyster Bay* explained that substantial evidence *is* the heightened standard of review that applies under the TCA, as opposed to the otherwise "extremely deferential stance" federal courts have taken concerning "local zoning decisions." 166 F.3d at 493. Thus, to the extent that Vogue's argument might be interpreted as advocating for a substantial-evidence-plus standard of review, the Court rejects such argument.

In addition to stipulating to the applicable standard of review, the parties have agreed that our review is limited to the record before the Board when it rendered its decision, and that the contents of the RP at Docket No. 29 are authentic and admissible.

*Bd. of Easttown Twp.*, 248 F.3d 101, 106 (3d Cir. 2001) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). A court employing the substantial evidence test may not weigh the evidence itself or stand in place of the factfinder, but is charged with "determin[ing] whether there is substantial evidence in the record as a whole to support the challenged decision." *Id.* (quoting *AT&T Wireless v. Zoning Bd. of Adjustment of the Borough of Ho–Ho–Kus*, 197 F.3d 64, 71 (3d Cir. 1999)). The Court reviews the entire record to determine whether the Board's decision is supported by substantial evidence. *Ogden Fire Co. No. 1*, 504 F.3d at 379. If there is competent conflicting evidence in the record, the factfinder must have articulated reasons for discarding it. *Glob. Tower, LLC v. Hamilton Twp.*, 897 F. Supp. 2d 237, 251 (M.D. Pa. 2012) (quoting *Zoning Bd. of Adjustment of the Borough of Ho–Ho–Kus*, 197 F.3d at 71)). If the Court determines that "substantial evidence in the record supports even one of the reasons given for the denial, the Court must sustain the … decision." *SBA Commc'ns, Inc. v. Zoning Comm'n of Town of Brookfield*, 112 F. Supp. 2d 233, 237 (D. Conn. 2000).

### III. Discussion

In their motions for judgment on Counts 1 and 4, the parties ask the Court to decide whether the Board's decision rejecting the bases of Vogue's application—substantive validity/*de facto* exclusion, special exception, and variances—is supported by substantial evidence. Vogue argues that the Board's decision lacks adequate reasoning and ignores factual and legal support included with its application and presented at a public hearing. The Board argues that it supported its decision with substantial evidence and that Vogue's application was denied because Vogue failed to produce sufficient evidence to support its arguments for approval under any of the theories presented. The Court herein addresses each of the theories presented in Vogue's application and

the Board's rejection of them individually, starting with Vogue's substantive validity/*de facto* exclusion argument.

      A.      Substantive Validity / *De Facto* Exclusion

The Board explained in its decision that Vogue failed to meet its burden to show the Ordinance was exclusionary for purposes of its substantive validity challenge. As discussed *supra*, Section II, the Court must decide whether the Board's decision in this respect is supported by substantial evidence, *i.e.*, "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Ogden Fire Co. No. 1,* 504 F.3d at 378.

Under Pennsylvania law, zoning ordinances are presumptively valid and constitutional. *APT Pittsburgh Ltd. P'ship v. Lower Yoder Twp., Cambria Cnty.*, 111 F. Supp. 2d 664, 678 (W.D. Pa. 2000). Challengers thereto have the weighty task of overcoming this presumption, which is only overcome in "rare instances when the ordinance excludes an otherwise legitimate use." *Id.* (citing *Farrell v. Worcester Twp. Bd. of Supervisors*, 481 A.2d 986, 989 (Pa. Commw. Ct. 1984)); *Omnipoint Commc'ns Enter., L.P.*, 248 F.3d 107 ("Unless the challenger demonstrates that the ordinance in question completely or effectively excludes a legitimate use, ... the challenger has failed to carry its burden" (quoting *Ficco v. Bd. of Supervisors of Hempfield Twp.*, 677 A.2d 897, 899 (Pa. Commw. Ct. 1996)).

There are two types of exclusion: *de jure* and *de facto*: "[a] *de jure* exclusion is one that, on its face, totally bans a legitimate use. *Pennsylvania Cellular Tel. Corp. v. Zoning Hearing Bd. Buck Twp.*, 127 F. Supp. 2d 635, 641–42 (M.D. Pa. 2001) (quoting *APT Pittsburgh Ltd. P'Ship*, 196 F.3d at 475) (cleaned up)). Because the Ordinance permits communications towers in I-1 zoning districts, Vogue has not argued the Ordinance is *de jure* exclusionary. *See id.* at 642 ("Because the ordinance does not, on its face, totally ban communication towers, and the

Ordinance may be interpreted in such a manner as to allow for such use, it cannot be said to be *de jure* exclusionary."). Vogue's argument, rather, is that the Ordinance is *de facto* exclusionary, that is, it "permits a use on its face, but when applied acts to prohibit the use throughout the municipality." *APT Pittsburgh Ltd. P'ship*, 111 F. Supp. 2d at 678 (quoting *Farrell*, 481 A.2d at 989); *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009). It's more difficult for ordinance challengers to show a *de facto* exclusion than it is to prove that a zoning ordinance is *de jure* exclusionary. *Appeal of Shore*, 573 A.2d 1011, 1012 (Pa. 1990) ("Though the proof is more difficult, it is also possible to show that a use is effectively prohibited throughout the municipality although it is apparently permitted."). If a challenger can prove "total prohibition of a legitimate use, the burden shifts to the municipality to establish that the prohibition promotes public health, safety, morals and general welfare." *Fernley v. Bd. of Supervisors of Schuylkill Twp.*, 502 A.2d 585, 587 (Pa. 1985).

Before the Board, Vogue argued that there must be a place for lawful uses in every Pennsylvania municipality and that the Ordinance was *de facto* exclusionary because "even though communications towers are expressly allowed in the I-1 district, cellular coverage is needed in portions of the Township other than that which may be reached in from the I-1 district." (RP 282). Therefore, Vogue argued, the Ordinance was "unconstitutionally exclusionary in application and thus constitutes a *de facto* exclusion of communications towers in this case." (*Id.*). Vogue offered an "Engineering Necessity Report" and a list of "Nearby Towers" in support of its application. (*Id.*). The Engineering Necessity Report is a report that appears to be produced by Verizon that indicates the goal of the 604 Ridge project is to remedy "4G data overloads." (RP 288). Vogue's "Nearby Towers" exhibit lists nearby towers. (RP 298). In addition to this evidence, Vogue offered testimony at the public hearing from, *inter alia*, David Chrzan who looked for a suitable

9

location for the tower in a "search ring" provided to him. (RP 29).[6] He indicated he looked at three properties, and that 604 Ridge was the only one that was ultimately suitable and available. (RP 31).

The Board rejected Vogue's argument for approval of its application based on substantive validity/*de facto* exclusion. The Board explained that Vogue failed to meet the high burden of proof shouldered by challengers of the validity and constitutionality of zoning ordinances. The Board's findings of fact and conclusions of law relevant to its rejection of Vogue's *de facto* exclusion argument included: FOF ¶ 13, "Vogue … offered testimony that it exhausted other opportunities for other locations within Township to provide what it believed to be necessary coverage to achieve Vogue Tower's stated goal [to reduce potential loss of interruption of cell service in the above indicated service area, *id.* ¶ 11]"; FOF ¶ 18, "Vogue … has filed a substantive validity challenge alleging that because cellular coverage is needed in areas of the Township that cannot be served by placing a communications tower in an I-1 Zoning District, application of the restriction to that Zoned area is exclusionary"; FOF ¶ 25, "Residents provided testimony that there was not a disruption in cell phone service, there did not appear any issues or problems regarding dropped calls or the ability to make calls"; COL ¶ 3, "The [Board] finds that the Zoning Ordinance, on its face, is not exclusionary"; COL¶ 4, "Sufficient real property exists within Township and bears an I-1 Zoning Classification to allow multi-carrier communications towers as that proposed by Applicant. Co-location of telecommunications facilities are permitted in all zoning districts within the Township...."; COL ¶ 5, "Applicant provided testimony that areas of Chartiers Township are in need of such multi-carrier communications tower because coverage is not

---

[6] Chrzan testified that "[w]hen a carrier determines they have need for coverage in a certain area, they develop a search ring of the area that needs coverage and assign it to a site acquisition contractor," and that in December 2019 "Verizon assigned [Chrzan, of Signal Mountain Communications] this search ring." (RP 28-29).

available or insufficient in areas of Township"; COL ¶ 6, "Numerous residents in the immediate affected area, as well as others in the affected area, provided testimony that cell phone coverage is adequate, that they have not experienced issues with service or dropped calls and that service is available"; COL ¶ 8, "To that extent, the Board finds that Applicant did not meets [sic] its applicable burden of proof, that the evidence offered on that issue was not credible and that the Township Zoning Ordinance, in its application, was not exclusionary." (Docket No. 4-1).

Having reviewed this articulation of the Board's decision in light of the record at the time it was rendered, the Court is satisfied that the decision is supported by substantial evidence. The Board's findings are not conclusory, as charged by Vogue. Nor did the Board mischaracterize evidence or over rely on vague assertions that suitable property in I-1 zoning districts would be adequate for Vogue's purposes.[7] It was incumbent on Vogue as the bringer of the *de facto* exclusion challenge to demonstrate that the Ordinance "permits [its proposed] use on its face, but when applied acts to prohibit [such] use throughout the municipality." *Farrell*, 481 A.2d at 989. Contrary to Vogue's argument that the Board failed to give specific reasons for its denial, the Board clearly explained that Vogue's application was rejected because Vogue failed to carry its heavy burden of showing its use was totally excluded where a good deal of real property in the Township is zoned I-1 and therefore allows for communications towers.

---

[7] In its review of the Board's decision, the Court has focused on the reasons articulated by the Board *in* its decision and not arguments that have been raised for the first time before this Court, such as the Board's argument that the testimony presented by Vogue's CEO and Chrzan were "hearsay assertions by two witnesses who lack the appropriate qualifications to testify on" the matter of whether there was insufficient coverage in the area that would be impacted by Vogue's tower. (Docket. No. 35, pg. 15). The Board may not reinforce its decision with explanations for the decision not found therein. *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 803 (6th Cir. 2012). *See APT Pittsburgh Ltd. P'Ship*, 32 F. Supp. 2d at 794 (refusing to open a period of discovery because "newly discovered evidence could not have possibly formed the basis for the [board's] denial of the requested relief" and would allow the township to "retroactively justify its decision").

Vogue argues that the Board's decision effectively required Vogue to eliminate all I-1-zoned parcels to carry its burden. (Doc. No. 33-1, pg. 13, 14 ("And nowhere in the record is there any suggestion that there exists any feasible piece of property zoned I-1 that is close enough to the coverage deficit to be considered a viable site candidate."), 17). And Vogue argues that this amounts to the Board imposing a requirement not found in the Ordinance. (*Id.* at pg. 13 (citing *Ne. Pennsylvania SMSA LP*, 433 F. Supp. 3d at 727)). But the Court finds such arguments are unpersuasive. The Board rightly pointed out that it was incumbent on Vogue to present evidence showing the Ordinance's restriction of communications towers to I-1 zoning districts had the effect of excluding its legitimate use and that Vogue failed to make such a showing. Vogue relied heavily on its own assertion that sufficient coverage could not be achieved without building on land other than I-1 zoned land and on evidence that it had assessed two other sites in a search ring. But such evidence did not substantiate a claim of total exclusion, and the Board's decision that Vogue did not satisfy a challenger's burden in undermining a presumptively valid and constitutional zoning ordinance cannot be said to be inadequately supported pursuant to the substantial evidence test.[8]

---

[8] Having determined that the Board's decision is supported by substantial evidence for the aforementioned reasons, it is needless for the Court to address Vogue's argument that the Board erroneously burdened Vogue with making a showing related to public health, safety, or welfare. (Docket No. 33-1, pg. 13). Likewise, the Court need not address Vogue's argument that the Board wrongly disputed the existence of a coverage gap (*id.* at pg. 15), or that in relying on certain residents' testimony to adequate coverage the Board erroneously applied the "one-provider" rule (*id.* at pg. 19). The Court has determined that the Board's conclusion that Vogue did not present enough evidence to prove *total exclusion* for its substantive validity challenge is supported by substantial evidence, and the Board's decision will be sustained if substantial evidence supports one reason for the denial. *SBA Commc'ns, Inc.*, 112 F. Supp. 2d at 237.

Relatedly, to the extent that Vogue has also argued that the Board's rejection of its substantive validity/*de facto* challenge theory violated the TCA because it constituted a prohibition of personal wireless services (Docket No. 33-1, pg. 11), that argument is beyond the scope of the motions under the Court's consideration at this time. Whether the Board's decision prohibited or had the effect of prohibiting the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) is the subject of Vogue's Count 2. To the extent that the TCA's substantive restraint in Section 332(c)(7)(B)(i)(II) is referenced in the parties' briefing, the Court has excluded such arguments from its consideration of the motions before it, particularly because challenges brought under Section 332(c)(7)(B)(i)(II) are not

B.   Special Exception

In the alternative to its substantive validity/*de facto* exclusion argument before the Board Vogue sought approval for its communications tower at 604 Ridge by special exception. The Board rejected Vogue's special exception theory upon finding that Vogue's proposed use at 604 Ridge would not be similar to and compatible with permitted uses in an R-2 zoning district, and that its construction of the communications tower would conflict with the purposes and intent of the Ordinance. The Court reviews the Board's decision with respect to Vogue's special-exception theory for substantial evidence. *Ogden Fire Co. No. 1,* 504 F.3d at 378.

Under Pennsylvania law, a special exception is "a conditionally permitted use, allowed by the legislature if specifically listed standards are met." *Id.* at 382 (quoting *In re Brickstone Realty Corp.*, 789 A.2d 333, 340 (Pa. Commw. Ct. 2001)). That is, it's "not really an *exception* at all," but a conditional use "to be granted or denied by the zoning hearing board pursuant to express standards and criteria." *Id.* (quoting *In re Brickstone Realty Corp.*, 789 A.2d at 340). Applicants for a special exception have "both the duty of presenting evidence and the burden of persuading the board that [its] proposed use satisfies the objective requirements of the zoning ordinance for the grant of a special exception." *Siya Real Est. LLC v. Allentown City Zoning Hearing Bd.*, 210 A.3d 1152, 1157 (Pa. Commw. Ct. 2019) (quoting *Berner v. Montour Twp. Zoning Hearing Bd.*, 176 A.3d 1058, 1069 (Pa. Commw.), *appeal granted in part on other grounds*, 190 A.3d 593 (Pa. 2018)). If an applicant carries its burden of proof and persuasion that its proposed use meets ordinance requirements for a special exception, then the applicant benefits from a "presumption that the requested use 'is consistent with the promotion of health, safety, and general welfare.'" *Ogden Fire Co. No. 1*, 504 F.3d at 382 (quoting *In re Brickstone Realty Corp.*, 789 A.2d at 340).

---

reviewed in the same manner as the issues before the Court today. *See APT Pittsburgh Ltd. P'ship*, 196 F.3d at 475. The parties may raise such arguments in the future when the Court addresses Count 2.

And, at that point, it is incumbent on "objectors to prove that the proposed use is not, in fact, consistent with the promotion of health, safety, and general welfare." *Id.* (quoting *In re Brickstone Realty Corp.*, 789 A.2d at 340). Of course, that secondary part of the analysis only becomes relevant once an applicant has established its proposed use meets ordinance requirements.

For purposes of Vogue's request for a special exception, the relevant section of the Ordinance is Section 350-43—Uses not specifically provided for—wherein the Ordinance dictates that

> [w]henever in any district established under this chapter a use is neither specifically permitted or denied and an application is made by a property owner to the Zoning Officer for such use, the Zoning Officer shall refer the application to the Board, which shall have the authority to permit or deny the use. The use may be permitted *if it is similar to and compatible with permitted uses in the district and in no way is in conflict with the general purposes and intent of this chapter*.

*Id.* (emphasis added). Before the Board, Vogue argued that its proposed use met the requirements of Section 350-43. (RP 283). Vogue argued that communications towers were not specifically permitted nor disallowed in R-2 zoning districts and that its proposed tower was "sufficiently similar to and compatible with the permitted uses" in the district (*e.g.*, oil and gas extraction, windmills for wind energy generation, public utility buildings and facilities, and essential services). (*Id.*). Vogue further argued that its proposed tower was not in conflict with general purposes of the Ordinance. (*Id.*).

The Board ultimately disagreed and rejected Vogue's argument for a special exception. It entered the following relevant findings of fact and conclusions of law in its decision to explain its determination: FOF ¶¶ 21, 22, "Vogue Tower offers that the proposed communications tower should be permitted in the R-2 District because it complies with Section 350-43 … and is 'similar to and compatible with permitted uses in the R-2 District'"; COL ¶ 13(a), "The Board finds that

14

the requested use of a multi-carrier telecommunications tower in an R-2 Zoning District is neither 'similar to and compatible with' other permitted uses in the R-2 Zoning District"; COL ¶ 14, "The Board finds that construction of a multi-carrier telecommunications tower, as proposed by Applicant, in an R-2 District is in conflict with the general purposes and intent of the Zoning Ordinance and specifically that Section as it pertains to R-2 Zoning District"; COL ¶ 15, "The Board finds that the Zoning Ordinance, when read as a whole, specifically permits a multi-carrier telecommunication tower in an I-1 District and that such multi-carrier telecommunications tower is prohibited in all other zoning Districts, specifically applicable herein, an R-2 District"; COL ¶ 16, "The Board finds Applicant's argument that a multi-carrier telecommunication tower is permitted in an R-2 District because the Zoning Use Chart, applicable to telecommunications tower, does not have a specific 'N' for 'No' or 'Not' or some designation to specifically indicate that such a tower is not permitted in an R-2 District, is not persuasive." (Docket No. 4-1).

Having considered the Board's explanation of its decision and the record at the time of decision, the Court decides that the decision is supported by substantial evidence. Vogue argues before the Court, as it did before the Board, that its communications tower is similar to uses that are allowed in R-2 zoning districts, like antennas, satellite dishes, oil and gas, windmills, etc. But Vogue's presentation then and now is conclusory. Vogue generally argues that its proposed use is commercial, just as some of the permitted uses are commercial, and that its proposed use would be less intrusive than, *e.g.*, oil and gas extraction operations. Vogue argues that some of the permitted uses are exempted from height restrictions pursuant to Section 350-35.E of the Ordinance ("The height limitations of this chapter shall not apply to church spires, belfries, domes, monuments, observation towers, windmills, chimneys, smokestacks, flagpoles, masts and aerials, barns and silos, elevators, tanks and other projections neither intended nor used for human

occupancy."). Vogue contends that because it showed its use was functionally and aesthetically like other permitted uses, the burden shifted to the Board and any objectors to show that the proposed use conflicted with the general purposes and intent of the Ordinance or was inconsistent with promotion of general health and welfare.

Critically, however, the Board explained that Vogue failed to establish that its communication tower was similar to and compatible with other permitted uses pursuant to Section 350-43. The record supports that determination. Vogue's application merely states that "the proposed tower is sufficiently similar to and compatible with permitted uses" and lists examples. (RP 283). And in its presentation to the Board, Vogue listed permitted uses in R-2 zoning districts, like oil and gas extraction activities and windmills to show similarity and compatibility, without providing concrete evidence of similarity. (RP 348-49). In light of the conclusory nature of Vogue's presentation of similarity and compatibility for its special-exception theory, it was reasonable for the Board to reject Vogue's request for a special exception. The Court cannot say that determination is unsupported by substantial evidence. Vogue has not pointed to specific evidence of similarity in the record that the Board overlooked in deciding that Vogue failed to carry its burden with respect to that question.[9] Accordingly, the Court finds that the Board's

---

[9] Before the Court, the Board argues that the proposed tower's height would greatly exceed that of windmills because the height maximum for windmills is 60 feet. *See* Ordinance, Section 350-48.1(D). The Board also argues that Vogue's argument for a special exception was undermined by the existence of "essential services" as a permitted use in R-2 zoning districts when communication towers are *specifically excluded* from the list of "essential services" that appears at Section 350-16. Vogue challenges the Board's reliance on those provisions before this Court when the Board did not cite them in its written decision. Vogue also argues that the Ordinance's height restriction for windmills is somewhat ambiguous because Section 350-35(E) excepts windmills and other structures from the Ordinance's height limitations. This Court's decision that the Board's rejection of Vogue's special exception theory is supported by substantial evidence is based on the Board's stated rationale in light of Vogue's vague and conclusory similarity/compatibility presentation and not on arguments that have been raised for the first time before this Court.

decision with respect to its denial of Vogue's application for a special exception is adequately supported by substantial evidence.

    C.    <u>Variances</u>

Finally, the Court briefly addresses the Board's decision with respect to variances. The Board explained in its written decision that it rejected Vogue's argument for variances because Vogue "failed to demonstrate any unnecessary hardship, nor any unnecessary hardship not of [Vogue's] making, to justify the grant of a variance, be it use or dimensional." (Docket No. 4-1, COL ¶ 20). This determination is reviewed for substantial evidence. That said, the Court notes that Vogue has minimally addressed the Board's decision with respect to variances in its motion for judgment on Counts 1 and 4. Vogue describes its request for variances as an "alternative" way for the Board to approve its application and argues that the Board's rejection of its variances argument "does not justify the other deficiencies in its Decision," *i.e.*, its denial of requested variances "is not substantial evidence supporting the Board's denial of Vogue's application." (Docket No. 33-1, pg. 20). In response, the Board argues that Vogue "dismisses its request for a variance as a mere alternative ground for its application to the Zoning Board, and asserts that the Court need not address it." (Docket No. 38, pg. 20).

The Court is inclined to agree that Vogue has abandoned the variances-theory for approval of its application. But, in any event, the Court is satisfied that the Board's rejection of Vogue's request for variances is not unsupported by substantial evidence. Vogue's request for variances and presentation of such before the Board was minimal despite the high burden Pennsylvania law puts on applicants seeking a zoning variance. "The burden on an applicant seeking a zoning variance is heavy, and variances should be granted sparingly and only under exceptional circumstances." *Fairview Twp. v. Fairview Twp. Zoning Hearing Bd.*, 233 A.3d 958, 963 (Pa.

Commw. Ct. 2020). In its application, Vogue sought a use variance as a way for the Board to "authorize only site- and case- specific relief in the form of granting a use variance" instead of rendering a finding that the Ordinance was in any respect invalid. (RP 283). It sought a dimensional variance wherein it explained that lot-by-lot development standards as applied to its tower would only require a variance for height, and further explained that no variances would be required if the Board were to apply the height limit for communications towers in I-1 zoning districts. (RP 283-84). Its presentation of this theory to the Board was consistent therewith. (RP 356-60). As indicated above, the Board found this presentation of evidence did not include a showing of unnecessary hardship for a variance. Vogue has not identified any evidence that the Board overlooked in arriving at that determination. For this and the foregoing reasons, the Court is satisfied that the Board's decision is supported by substantial evidence. Therefore, the Court concludes that the Board's decision neither runs afoul of Section 332(c)(7)(B)(iii) of the TCA nor violates Pennsylvania state law, and the Board is entitled to judgment as a matter of law with respect to Counts 1 and 4 of Vogue's Complaint.

### IV.  Conclusion

Based on the foregoing, the Board's motion for judgment on Counts 1 and 4 is **granted**. Vogue's motion for judgment on Counts 1 and 4 is **denied**. An Order consistent with this Memorandum Opinion follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated:       January 23, 2024

Cc/ecf:       All counsel of record